**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JAY TODD HESSMAN,

        Defendant.

No. CR 02-3038-LRR

**ORDER RE: DEFENDANT'S
POST-TRIAL MOTIONS**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
*II.*    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . **2**
*III.*   *TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
*IV.*   *MOTION TO ARREST JUDGMENT PURSUANT TO RULE 34* . . . . . . . . **5**
     *A.*   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
     *B.*   *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
         *1.*   *Speedy Trial Act* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
         *2.*   *Speedy Trial Calculation* . . . . . . . . . . . . . . . . . . . . **7**
*V.*    *MOTION FOR POST-JUDGMENT OF ACQUITTAL*
       *PURSUANT TO RULE 29* . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
     *A.*   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
     *B.*   *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
*VI.*   *MOTION FOR NEW TRIAL PURSUANT TO RULE 33* . . . . . . . . . . . **15**
     *A.*   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
     *B.*   *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
         *1.*   *Motions in Limine* . . . . . . . . . . . . . . . . . . . . . . . . **16**
             *i.*    *Similar Acts Evidence* . . . . . . . . . . . . . . . . . . . . **16**
             *ii.*   *Evidence seized from a blue Cutlass* . . . . . . . . . . . . . **18**
             *iii.*  *Evidence of an active methamphetamine laboratory*
                  *and a recipe for methamphetamine production* . . . . . . **19**
         *2.*   *Coconspirator Statements* . . . . . . . . . . . . . . . . . . . **19**
             *i.*    *Federal Rule of Evidence 801(d)(2)(E)* . . . . . . . . . . **19**

| | | | |
|---|---|---|---|
| | *ii.* | *Bell Hearing* | *20* |
| | *iii.* | *Inadmissible Hearsay Testimony* | *21* |
| | | *a.* *Brand's Testimony* | *21* |
| | | *b.* *Carlson's Testimony* | *22* |
| | | *c.* *Kicklighter's Testimony* | *24* |
| | *iv.* | *Curative Instruction* | *26* |
| | *v.* | *Mistrial* | *27* |
| *3.* | | *Jury Instructions* | *27* |
| *4.* | | *Testimony of Matthew Sturdevant* | *29* |
| *5.* | | *Failing to Grant Defendant's Motion for Judgment of Acquittal* | *29* |
| *6.* | | *Five Grams or More of Methamphetamine* | *29* |
| *VII.* | | *CONCLUSION* | *30* |

## I. INTRODUCTION

The matter before the court is the Post-Trial Motions ("Motion") filed by Defendant Jay Todd Hessman (docket no. 111). Chief Judge Bennett presided over the case until it was reassigned to Judge Reade on October 25, 2005.

## II. PROCEDURAL BACKGROUND

On October 24, 2002, the grand jury, in a one count indictment, charged Defendant with knowingly and unlawfully combining, conspiring, confederating and agreeing with other persons to manufacture and distribute five grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. On November 15, 2002, Defendant was arraigned, and the court scheduled the trial to begin on January 6, 2003.

On December 9, 2002, Defendant filed a Motion to Continue Pre-Trial Deadline and Trial. The next day, the court granted the Motion to Continue Pre-Trial Deadline and Trial, and reset the trial date to February 3, 2003.

On January 2, 2003, a conflict of interest required Defendant's court-appointed

attorney to withdraw from the case. The court appointed new counsel to represent Defendant and continued the trial until March 3, 2003.

On March 3, 2003, Defendant filed a Motion to Suppress. On May 6, 2003, Chief Judge Bennett granted Defendant's Motion to Suppress. Three days later, on May 9, 2003, the government filed a Motion to Continue Trial and the court granted the motion, allowing the United States to file an interlocutory appeal.

The Eighth Circuit Court of Appeals reversed the court's ruling on the Motion to Suppress. On August 16, 2004, the court received notice of the decision of the Eighth Circuit Court of Appeals.

On September 8, 2004, Defendant filed a Motion to Continue Trial. The next day, on September 9, 2004, the court granted the motion, allowing Defendant to file a Petition for Writ of Certiorari with the United States Supreme Court. The court continued the trial indefinitely. The Supreme Court denied Defendant's Petition for Writ of Certiorari on January 10, 2005. Neither party informed the court that the Petition for Writ of Certiorari had been denied.

In March of 2005, the court learned that the Supreme Court had denied Defendant's Petition for Writ of Certiorari. On March 11, 2005, Defendant's court-appointed attorney withdrew from the case. Three days later, on March 14, 2005, the court appointed new counsel to represent Defendant and reset the trial to May 16, 2005, to provide time for Defendant's new counsel to prepare for the trial.

On May 13, 2005, Defendant filed a Motion to Dismiss Indictment. In the Motion to Dismiss Indictment, Defendant alleged prosecuting him would violate the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. On June 16, 2005, the court denied Defendant's Motion to Dismiss Indictment.

The court continued the trial three more times: on May 17, 2005 the court, on its

own motion, continued the trial until July 5, 2005; on June 24, 2005, the court granted, in part, Defendant's Motion to Continue Trial and Extend Time for Filing Motions, continuing the trial until September 12, 2005; and on August 26, 2005, the court granted Defendant's Motion to Continue Trial, continuing the trial until November 7, 2005.

On November 7, 8, 9 and 10, 2005, Defendant was tried before a jury. Defendant was personally present and represented by Joseph J. Hrvol. Assistant United States Attorney Kevin Fletcher represented the government. At the close of the government's case, Defendant made an oral motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion. At the conclusion of all of the evidence, Defendant orally renewed his motion for judgment of acquittal, and the court again denied the motion. On November 10, 2005, the jury returned a verdict of guilty on Count 1.

On November 17, 2005, Defendant filed the instant Motion, which included a motion to arrest judgment and dismiss the case, a motion for a judgment of acquittal, and a motion for a new trial. On December 23, 2005, the government filed a Resistance.

On January 24, 2006, the court held a hearing on the Motion. Defendant was personally present and represented by Hrvol. Fletcher represented the government. The court finds the Motion to be fully submitted and therefore turns to consider it.

### III. TRIAL EVIDENCE

In 1997, Defendant met Travis Kicklighter in prison. Defendant and Kicklighter were cellmates at the penitentiary in Mount Pleasant, Iowa, during which time Defendant told Kicklighter he knew how to manufacture methamphetamine. After both Defendant and Kicklighter were released from the penitentiary, Kicklighter sought out Defendant.

In or about March of 2000, Defendant and Kicklighter began to manufacture methamphetamine together. The evidence showed Defendant conspired with Kicklighter

to manufacture and distribute methamphetamine in the spring of 2000. During the spring of 2000, Kicklighter saw Defendant with upwards of a pound of methamphetamine.

On May 14, 2000, law enforcement officers conducted a search of Defendant's property and home, located at 1102 Scott St., Ruthvan, Iowa. During the search, law enforcement officers seized portions of a methamphetamine laboratory, equipment used to manufacture methamphetamine and a recipe instructing how to manufacture methamphetamine. The officers seized several pieces of equipment used to manufacture methamphetamine from a blue Cutlass parked at Defendant's home. During the search, the officers also seized a small amount of methamphetamine and precursors, which if manufactured into methamphetamine, could have yielded 9 to 14 grams of methamphetamine. The officers seized .23 grams of actual methamphetamine.

## IV. MOTION TO ARREST JUDGMENT PURSUANT TO RULE 34

### A. Standard of Review

An arrest of judgment describes "the act of a trial judge refusing to enter judgment on the verdict because of an error appearing on the face of the record that rendered the judgment invalid." *United States v. Sisson*, 399 U.S. 267, 280-81 (1970). A motion to arrest judgment "must be based upon the failure of the indictment to charge an offense or upon a finding that the court was without jurisdiction of the offense." *United States v. Whitted*, 454 F.2d 642, 646 (8th Cir. 1972) (citing Fed. R. Crim. P. 34). Motions to arrest judgments "are rarely made, and it is even rarer that they are granted." 3 Charles Alan Wright, Nancy J. King, & Susan R. Klein, *Federal Practice & Procedure* § 571 (3d ed. 2004).

"'[A] motion in arrest of judgment can only be maintained for a defect apparent upon the face of the record, and the evidence is no part of the record for this purpose.'" *Sisson*, 399 U.S. at 281 (quoting *Bond v. Dustin*, 112 U.S. 604, 608 (1884)). For

purposes of Federal Rule of Criminal Procedure 34, the indictment, the plea, the verdict and the sentence comprise the record. *Sisson*, 399 U.S. at 281 n.10.

### B. Legal Analysis

In the instant Motion, Defendant asserts the government failed to bring him to trial within 70 speedy trial days in violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*.[1]

#### 1. Speedy Trial Act

"Under the Speedy Trial Act . . . a federal criminal defendant must be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever is later." *United States v. Yerkes*, 345 F.3d 558, 561 (8th Cir. 2003) (citing 18 U.S.C. § 3161(c)(1)). The Speedy Trial clock begins to run on the day after the latter of the filing of the indictment or arraignment. *See, e.g.*, *United States v. Dezeler*, 81 F.3d 84, 88 (8th Cir. 1996) (citing *United States v. Long*, 900 F.2d 1270, 1274 (8th Cir. 1990)). The Indictment charging Defendant must be dismissed if, after the excluded days have been omitted from the speedy trial calculation, the total number of speedy trial days exceeds seventy. *See Yerkes*, 345 F.3d at 561.

The Speedy Trial Act excludes certain days from the calculation of the seventy days. *See* 18 U.S.C. § 3161(h); *Henderson v. United States*, 476 U.S. 321, 326 (1986). Title 18, United States Code, Section 3161(h)(1)(J) provides the "delay reasonably attributable to any period not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement of the court" shall be excluded from the speedy trial calculation. 18 U.S.C. § 3161(h)(1)(J); *see Henderson*, 476 U.S. at 329. Additionally, the delay between the filing of a pretrial motion and the hearing, or if the

---

[1] Defendant does not allege any violation of his right to a speedy trial guaranteed by the Sixth Amendment of the Constitution.

pretrial motion can be disposed of without a hearing, the date when the court has received all the parties' submissions regarding the pretrial motion, shall be excluded from the speedy trial calculation. 18 U.S.C. § 3161(h)(1)(F); *Henderson*, 476 U.S. at 328-29; *United States v. McKay*, 431 F.3d 1085, 1091 (8th Cir. 2005) "([T]he Speedy Trial Act excludes periods of delay that are due to the filing of pretrial motions by either party"); *Long*, 900 F.2d at 1274. Title 18, United States Code, Section 3161(h)(1)(E) provides that delays due to interlocutory appeals shall be excluded from the speedy trial calculation. 18 U.S.C. § 3161(h)(1)(E); *Long*, 900 F.2d at 1276. Additionally, "[s]ection 3161(8)(A) allows a court to grant continuances should that court find it is in the interests of justice to do so after weighing the best interests of the defendant and the public to a speedy trial." *United States v. Horn*, 8 F.3d 1301, 1305 (8th Cir. 1993).

### 2. Speedy Trial Calculation

The grand jury indicted Defendant on October 24, 2002, and Defendant was arraigned on November 15, 2002. Therefore, the speedy trial clock started to run on November 16, 2002. *See Dezeler*, 81 F.3d at 88. The speedy trial clock ran until Defendant filed a Motion to Continue Pre-Trial Deadlines and Trial on December 9, 2002. Defendant's counsel requested the continuance to have time to review the government's discovery file, to continue to investigate and to prepare for trial. Pursuant to 18 U.S.C. §§ 3161(h)(1)(F) and (J), the speedy trial clock stopped on December 9, 2002. *See* 18 U.S.C. §§ 3161(h)(1)(F), (J). As of December 9, 2002, the speedy trial clock had run for 23 days.

The court granted the Motion to Continue Pre-Trial Deadline and Trial on December 10, 2002. The court continued the trial to the trailing docket beginning February 3, 2003. The court concluded that the delay due to granting Defendant's Motion to Continue Pre-Trial Deadline and Trial was excluded for purposes of the speedy trial

clock because the delay was in the interests of justice. *See* 18 U.S.C. § 3161(h)(8)(A). Therefore, as of February 3, 2003, the speedy trial clock had only run for 23 days.

On January 2, 2003, Defendant's court-appointed counsel filed a Motion to Withdraw. The next day, the court granted the Motion to Withdraw and found that Defendant's new court-appointed counsel needed time to prepare for trial. Accordingly, the court continued the trial to the trailing docket beginning March 3, 2003, and concluded that the delay due to the change in counsel was excluded for purposes of the speedy trial clock. *See, e.g.*, *Yerkes*, 345 F.3d at 562; *United States v. Maynie*, 257 F.3d 908, 914 (8th Cir. 2001); *United States v. Jones*, 23 F.3d 1307, 1311 (8th Cir. 1994); *Horn*, 8 F.3d at 1305. Therefore, as of March 3, 2003, the speedy trial clock had still only run for 23 days.

On March 3, 2003, Defendant filed a Motion to Suppress. To have time to rule on the Motion to Suppress, the court continued the trial until May 12, 2003. Also, on March 3, 2003, the court scheduled a hearing on the Motion to Suppress on March 18, 2003. On March 18, 2003, the court held, but did not complete, the hearing, and to allow the parties to present additional evidence, continued the hearing to April 11, 2003. The delay from March 3 to April 11, 2003 was excluded for purposes of the speedy trial calculation because the court held a hearing on the motion. *See* 18 U.S.C. § 3161(h)(1)(F). On April 14, 2003, Magistrate Judge Zoss issued a Report and Recommendation on Defendant's Motion to Suppress. The delay from April 11 to April 14, 2003 is excluded for purposes of the speedy trial calculation because Magistrate Judge Zoss had Defendant's Motion to Suppress under advisement. *See id*. § 3161(h)(1)(J); *Long*, 900 F.2d at 1275. On May 6, 2003, Chief Judge Bennett ruled on the Report and Recommendation on the Motion to Suppress. The delay from April 14 to May 6, 2003 was excluded for purposes of the speedy trial calculation because Chief Judge Bennett had Defendant's motion under

advisement. *See* 18 U.S.C. § 3161(h)(1)(J). Therefore, the time from March 3 to May 6, 2003 was excluded for purposes of the speedy trial calculation. As of May 6, 2003, the speedy trial clock had run for 23 days. On May 7, 2003, the speedy trial clock started to run again.

On May 9, 2003, the government appealed Chief Judge Bennett's order granting Defendant's Motion to Suppress and filed a Motion to Continue. The court granted the motion, continuing the trial pending resolution of the appeal. Therefore, as of May 9, 2003, the speedy trial clock had run for two additional days, bringing the total number of speedy trial days to 25.

On June 1, 2004, the Eighth Circuit Court of Appeals reversed Chief Judge Bennett's ruling. On August 16, 2004, the court received notice of the judgment of the Eighth Circuit Court of Appeals. Pursuant to 18 U.S.C. § 3161(h)(1)(E), the delay from May 9, 2003 to August 16, 2004 is excluded for purposes of the speedy trial calculation because the delay was due to an interlocutory appeal. *See Long*, 900 F.2d at 1276. As of August 16, 2004, the speedy trial clock had run for only 25 days.

On August 17, 2004, the speedy trial clock started to run again. The speedy trial clock ran until Defendant filed a Motion to Continue Trial on September 8, 2004, on grounds that Defendant was filing a Petition for Writ of Certiorari with the United States Supreme Court. The filing of the Motion to Continue Trial stopped the running of the speedy trial clock on September 8, 2004. *See* 18 U.S.C. §§ 3161(h)(1)(F), (J). From August 17, 2004 to September 8, 2004, the speedy trial clock ran for 22 days, bringing the total number of speedy trial days to 47.

On September 9, 2004, the court granted Defendant's Motion to Continue Trial and excluded the delay for purposes of speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(1)(E). In the order granting Defendant's Motion to Continue Trial, the court

stated, "[t]he parties are directed to notify the court when a ruling is issued on the defendant's petition for certiorari." (Docket No. 53).

The Supreme Court denied Defendant's Petition for Writ of Certiorari on January 10, 2005. *Hessman v. United States*, 125 S.Ct. 917 (2005). Neither the government nor Defendant notified the court that the Supreme Court had denied Defendant's Petition for Writ of Certiorari. Moreover, neither the Supreme Court nor the Eighth Circuit Court of Appeals notified the court of the denial. Rather, the court learned that Defendant's Petition for Writ of Certiorari had been denied when Defendant's court-appointed counsel filed a Motion to Withdraw on March 11, 2005.

Defendant alleges the speedy trial clock started to run on January 11, 2005, when the Supreme Court for the United States denied Defendant's Petition for Writ of Certiorari. The government, however, alleges the speedy trial clock did not start running on January 11, 2005 because neither the government nor Defendant informed the court that the Petition for Writ of Certiorari had been denied. In the context of a district court receiving notice from an appellate court, the Eighth Circuit Court of Appeals has stated:

> The mandate from [the Eighth Circuit Court of Appeals] following disposition of the appeal was issued September 29, 1988, and was filed with the clerk of the district court on October 3, 1988. [The defendant] argues that any period excluded for the interlocutory appeal should end the date the mandate is issued, or September 29, 1988. The government urges the relevant date is the date the mandate was received by the clerk of the district court, October 3, 1988. We agree with the government. *The district court is unable to proceed to trial until it has received the appellate court's mandate.*

*Long*, 900 F.2d at 1276 (emphasis added). That is, the speedy trial clock starts when the court receives notice of a decision, not when the decision is issued. *See id.* The court

received notice of the Supreme Court's decision on March 11, 2005, when Defendant's counsel filed a Motion to Withdraw.

Defendant argues the consequences of failing to inform the court must be borne by the government. Defendant asserts that in *Barker v. Wingo*, 407 U.S 514, 527 (1972), the Supreme Court held defendants have no duty to bring themselves to trial, and accordingly, Defendant had no duty to notify the court that the Petition for Writ of Certiorari had been denied. In *Barker v. Wingo*, the Court stated, "if the delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine . . . ." *Id*. at 529. Therefore, the court finds, even if Defendant has no duty to bring himself to trial, Defendant had a duty to comply with the court's order requiring that the parties notify the court of any ruling regarding Defendant's Petition for Writ of Certiorari, or, in the alternative, Defendant waived any violation of the Speedy Trial Act by failing to notify the court that the Supreme Court had denied his Petition for Writ of Certiorari. *See, e.g.*, *id.*; *Jones*, 23 F.3d at 1311.

On March 11, 2005, Defendant's counsel filed a Motion to Withdraw and the court took the motion under advisement. Pursuant to 18 U.S.C. § 3161(h)(1)(J), the speedy trial clock did not started because the court had the motion under advisement. *See* 18 U.S.C. § 3161(h)(1)(J).

On March 14, 2005, the court granted the Motion to Withdraw and continued the trial until May 16, 2005 to provide Defendant's new court-appointed counsel time to prepare for trial. The court found that continuing the trial was in the interest of justice and excluded the delay for purposes of the speedy trial calculation. *See* 18 U.S.C. § 3161(h)(8); *Yerkes*, 345 F.3d at 562; *Maynie*, 257 F.3d at 914; *Jones*, 23 F.3d at 1311; *Horn*, 8 F.3d at 1305. Accordingly, the speedy trial clock did not run from September 9, 2004 to May 16, 2005. Therefore, as of May 16, 2005, the speedy trial clock had still

only run for 47 days.

Three days before the scheduled trial, on May 13, 2005, Defendant filed a Motion to Dismiss Indictment. Four days later, to allow sufficient time to rule on Defendant's Motion to Dismiss Indictment, the court continued the trial to July 5, 2005. On May 20, 2005, Magistrate Judge Zoss filed a Report and Recommendation regarding Defendant's Motion to Dismiss, and on June 16, 2005, the court ruled on the Report and Recommendation on the Motion to Dismiss. Pursuant to 18 U.S.C. §§ 3161(h)(1)(F) and (J), the delay due to the filing of Defendant's Motion to Dismiss Indictment must be excluded for purposes of the speedy trial calculation. *See* 18 U.S.C. §§ 3161(h)(1)(F), (J). As of June 16, 2005, the speedy trial clock had run for 47 days.

The speedy trial clock started to run the day after the court ruled on the Motion to Dismiss Indictment, June 17, 2005. The speedy trial clock stopped when, on June 23, 2005, Defendant filed a Motion to Continue Trial and Extend Time for Filing Motions. The next day, the court granted Defendant's request to continue the trial, however, the court denied Defendant's request to extend time for filing motions. The court continued the trial until September 12, 2005. The court found the delay resulting from continuing the trial was excluded from the speedy trial calculation under 18 U.S.C. § 3161(h)(8)(A) because continuing the trial was in the interests of justice. Therefore, as of September 12, 2005, the speedy trial clock had run for an additional six days, bringing the total number of speedy trial days to 53.

On August 24, 2005, Defendant filed another Motion to Continue Trial. On August 26, 2005, the court continued the trial for the last time. The court continued the trial until November 7, 2005. The court concluded that the delay due to granting the motion was excluded for purposes of the speedy trial calculation under 18 U.S.C. §§ 3161(h)(8)(A) and 3161(h)(8)(B)(iv) because the court found that continuing the trial would serve the

ends of justice and outweigh the interests of the public in a speedy trial and Defendant's right to a speedy trial. Therefore, the speedy trial clock had run for only 53 days as of November 7, 2005.

On November 7, 2005, the jury trial began before Judge Reade. The speedy trial clock had run from November 15 to December 9, 2002 (23 days), from May 7 to May 9, 2004 (2 days), from August 17 to September 8, 2004 (22 days) and from June 17 to June 23, 2005 (6 days). That is, the speedy trial clock ran for 53 days, well under the 70 day maximum permitted under the Speedy Trial Act, 18 U.S.C. § 3161. Therefore, the court denies Defendant's Motion to Arrest Judgment because Defendant was not tried in violation of the Speedy Trial Act.

## V. MOTION FOR POST-JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29

### A. Standard of Review

Rule 29 of the Federal Rules of Criminal Procedure provides, in pertinent part:

> [T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

Fed. R. Crim. P. 29(a). A defendant may renew this motion following conviction. *Id*. 29(c). However, it is well-settled that "[j]ury verdicts are not lightly overturned." *United States v. Hood,* 51 F.3d 128, 129 (8th Cir. 1995) (citing *United States v. Burks*, 934 F.2d 148, 151 (8th Cir. 1991)). A judgment of acquittal should only be granted "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999).

In determining whether to grant a motion for judgment of acquittal based on the

sufficiency of the evidence, the court may neither weigh the evidence nor evaluate the credibility of witnesses, as these tasks lie exclusively within the province of the jury. *United States v. Ireland*, 62 F.3d 227, 230 (8th Cir. 1995). Instead the court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997). The court can overturn a jury's verdict only if "'a reasonable fact finder must have entertained a reasonable doubt about the government's proof'" of one of the essential elements of the crime charged. *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir. 1995) (quoting *United States v. Nunn*, 940 F.2d 1128, 1131 (8th Cir. 1991)). Moreover, "[t]his standard applies even when the conviction rests entirely on circumstantial evidence." *United States v. Davis,* 103 F.3d 660, 667 (8th Cir. 1996).

## B. Legal Analysis

In the Motion, Defendant asserts, "the evidence was insufficient on the [issue of drug quantity] as a matter of law, and the jury was allowed to engage in speculation and conjecture concerning the amount of pure methamphetamine involved in any proven conspiracy." At trial, the government presented evidence proving Defendant possessed five grams or more of actual methamphetamine. Criminalist Terry Rowe testified a search of Defendant's residence discovered .23 grams of actual methamphetamine. Moreover, Rowe testified that the precursor chemicals found during the search, if manufactured to methamphetamine, could have produced a potential yield of 9.8 to 14.7 grams of actual methamphetamine. Additionally, co-conspirator Kicklighter testified Defendant had possessed upwards of a pound of methamphetamine during the spring of 2000. The government presented the jury with sufficient evidence to conclude Defendant possessed five grams or more of actual methamphetamine. Therefore, the court concludes Defendant

is not entitled to a Judgment of Acquittal.

## VI. *MOTION FOR NEW TRIAL PURSUANT TO RULE 33*

### A. *Standard of Review*

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Under Rule 33, district courts are granted broad discretion in considering motions for a new trial. *United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). However, unless the district court "ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also Ortega v. United States*, 270 F.3d 540, 547 (8th Cir. 2001) (noting that a district court may grant a new trial under Rule 33 "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred").

The Eighth Circuit Court of Appeals has noted that district courts enjoy more latitude in granting new trials under Rule 33 than in granting motions for acquittal under Rule 29. *Campos*, 306 F.3d at 579. However, "[m]otions for new trials based on the weight of the evidence are generally disfavored," and, therefore, district courts should exercise their Rule 33 authority "sparingly and with caution." *Id.*; *see also United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

### B. *Legal Analysis*

Defendant asserts he is entitled to a new trial because the court erred by (1) denying his Motions in Limine; (2) admitting coconspirator statements; (3) inadequately instructing

the jury; (4) refusing to admit the testimony of Matthew Sturdevant; (5) failing to grant the Motion for Judgment of Acquittal; and (6) allowing the jury to consider the five grams or more element of the offense.

### 1. *Motions in Limine*

Defendant asserts he is entitled to a new trial because the court erred in denying his Motions in Limine. In the Motions in Limine, Defendant made several arguments, including (1) evidence of Defendant's prior convictions, prior bad acts, prior drug use, prior drug-related activities and any other similar acts must be excluded pursuant to Federal Rule of Evidence 404(b); (2) evidence seized from the blue Cutlass and the associated laboratory report must be excluded because Defendant was never in possession of the car; and (3) evidence that Defendant's home was an active methamphetamine laboratory and a recipe for methamphetamine production must be excluded.[2]

### i. *Similar Acts Evidence*

Defendant argues the court must exclude similar acts evidence, including any evidence of Defendant's prior bad acts, prior convictions, past drug use and drug-related activities that occurred before the conspiracy. Defendant argued the similar acts evidence must be excluded under Federal Rule of Evidence 404(b). Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

---

[2] In the Motions in Limine filed before trial and the instant Motion, Defendant objected to the admission of any testimony about how and where Defendant met Kicklighter. The court discusses Defendant's argument at Part V.B.2.iii.c.

or accident . . . .

Fed. R. Evid. 404(b). "In order for evidence of prior bad acts to be admissible, the evidence must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." *United States v. Loveless*, 139 F.3d 587, 592 (8th Cir. 1998) (citing *United States v. Sills*, 120 F.3d 917, 920 (8th Cir. 1997)).

The government satisfied each 404(b) requirement for the similar acts evidence. First, the prior drug-related convictions and activities are relevant to show Defendant's knowledge and intent. *See, e.g.*, *United States v. Thomas*, 398 F.3d 1058, 1063 (8th Cir. 2005). Second, at trial, the government proved the evidence by a preponderance of the evidence through the testimony of several witnesses.[3] Third, the probative value of the evidence outweighed the prejudicial effect because the evidence was not inflammatory and the court instructed the jury about the proper use of the evidence. *See, e.g.*, *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005). Fourth, Defendant's prior convictions and drug use were sufficiently similar in substance and nature to the issues at trial and were sufficiently close in time to the charges. *See, e.g.*, *United States v. Walker*, 428 F.3d 1165, 1170-71 (8th Cir. 2005). Therefore, the court properly admitted the similar acts evidence pursuant to Federal Rule of Evidence 404(b).

Alternatively, even if the court erred by admitting the similar acts evidence under Federal Rule of Evidence 404(b), the evidence was properly admitted because it was inextricably intertwined with the conspiracy. "'[C]rimes or acts which are 'inextricably intertwined' with the charged crime are not extrinsic and Rule 404(b) does not apply.'" *Adams*, 401 F.3d at 899 (citing *United States v. O'Dell*, 204 F.3d 829, 833 (8th Cir.

_____

[3] At trial, the government and Defendant reached a stipulation regarding Defendant's prior convictions.

2000)). A crime or act is inextricably intertwined when it is "an integral part of the immediate context of the crime charged." *United States v. Rolett*, 151 F.3d 787, 790 (8th Cir. 1998). The Eighth Circuit Court of Appeals has stated, "[p]ossessing methamphetamine, even a small amount, during the period in which [a defendant] is accused of conspiring to distribute the *same* drug is direct evidence that defendant participated in the conspiracy, and therefore Rule 404(b) is not implicated." *O'Dell*, 204 F.3d at 834 (emphasis in original). Similarly, using, distributing and manufacturing methamphetamine near and during the time of the conspiracy is direct evidence that Defendant was involved with methamphetamine. Defendant asserts the court erred by admitting evidence concerning a time period before the beginning of the conspiracy, however, the evidence of Defendant's involvement with drugs near and during the time of the conspiracy is evidence that Defendant participated in the conspiracy. Therefore, the court properly admitted the evidence of Defendant's prior involvement with drugs.

### ii. Evidence seized from a blue Cutlass

Defendant argues the evidence seized from the blue Cutlass must be excluded because the government failed to prove Defendant was in actual or constructive possession of the automobile. "A person has constructive possession of contraband if he has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" *United States v. Willis*, 89 F.3d 1371, 1377 (8th Cir. 1996) (quoting *United States v. Temple*, 890 F.2d 1043, 1045 (8th Cir. 1989) (quoting *United States v. Matra*, 841 F.2d 837, 840 (8th Cir. 1988))). In the spring of 2000, Kicklighter drove the blue Cutlass and parked it on Defendant's property. Specifically, on one occasion, Kicklighter drove Defendant to Fort Dodge in the blue Cutlass so that he could steal pseudoephedrine pills. The police search of Defendant's property on May 14, 2000 found the blue Cutlass parked on Defendant's property. The court did not err by

admitting evidence seized from the blue Cutlass, which was located on Defendant's property.

### iii. *Evidence of an active methamphetamine laboratory and a recipe for methamphetamine production*

Defendant argued that any evidence suggesting his home was an active methamphetamine laboratory, including evidence of a recipe for methamphetamine production, must be excluded. Defendant never identified the Rule of Evidence that precluded admission of this evidence, rather Defendant argued the evidence was insufficient to support the conclusions that an active methamphetamine laboratory and a recipe for methamphetamine production were found on Defendant's property. Therefore, the court did not err by admitting the evidence and allowing Defendant to cross-examine witnesses regarding this evidence.

### 2. *Coconspirator Statements*

Defendant asserts the court erred by admitting several co-conspirator statements. Specifically, Defendant (1) asserts the court erred by not holding a *Bell* hearing prior to trial; (2) objects to the admission of portions of the testimony of Kimberly Brand, Jamie Carlson and Kicklighter; (3) argues that the curative instruction was inadequate; and (4) claims the court erred by failing to declare a mistrial.

### i. *Federal Rule of Evidence 801(d)(2)(E)*

Federal Rule of Evidence 801(d)(2)(E) provides that "[a] statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Pursuant to Rule 801(d)(2)(E), "'a co-conspirator's out-of-court statements can be admitted against the defendant 'if the government demonstrates: (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the

conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy.'" *United States v. Owens*, 953 F.2d 391, 393 (8th Cir. 1992) (quoting *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978)); *accord United States v. Mickelson*, 378 F.3d 810, 819 (8th Cir. 2004) (citing *United States v. Alcantar*, 271 F.3d 731, 739 (8th Cir. 2001)). "[W]here a hearsay objection has been made and the proponent contends that it is admissible under the co-conspirator rule, that statement may be conditionally admitted into evidence." *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1130 n.13 (8th Cir. 2000). At the close of the evidence, the court must "make an explicit determination for the record regarding the admissibility of the statement[.]" *Bell*, 573 F.2d at 1044.

For purposes of Defendant's Motions, the government has proven, by a preponderance of the evidence, that Defendant and Kicklighter were members of a conspiracy. At trial, the government offered evidence and testimony proving Defendant and Kicklighter entered into a conspiracy to manufacture and distribute methamphetamine. Therefore, regarding statements by Kicklighter, the only question to resolve is whether the statements were made in furtherance of the conspiracy.

### ii. *Bell Hearing*

Defendant contends the court erred by failing to conduct a *Bell* hearing before trial. "A court may conditionally admit a challenged statement subject to later proof to satisfy the coconspirator rule and defer a final ruling on admissibility until after hearing the relevant evidence." *United States v. Roach*, 164 F.3d 403, 409 (8th Cir. 1998). The Eighth Circuit Court of Appeals has never held that a court must hold a hearing before trial to determine the admissibility of coconspirator statements. *See United States v. Hester*, 140 F.3d 753, 758 (8th Cir. 1998) (stating "the *Bell* procedures are flexible"). Accordingly, the court did not err by ruling on the admissibility of the *Bell* statements until

after hearing the relevant testimony.

### iii. *Inadmissible Hearsay Testimony*

Defendant asserts the court erred by allowing the government to introduce inadmissible hearsay evidence. "Under [*Bell*, 573 F.2d at 1044,] the court may conditionally admit the evidence with a cautionary instruction." *United States v. McDougal*, 137 F.3d 547, 556 (8th Cir. 1998). At trial, the court conditionally admitted the portions of the testimony of Brand, Carlson and Kicklighter.

### a. *Brand's Testimony*

At trial, Defendant objected to Brand's testimony regarding the source of Kicklighter's drugs. On direct examination, Brand testified she doubted the quality of Defendant's methamphetamine and then the following exchange took place:

| | |
|---|---|
| Fletcher: | When you had talked with Mr. Kicklighter before[,] did he ever tell you where he was getting his drugs? . . . |
| Hrvol: | Objection, hearsay. |
| Fletcher: | Goes to conspiracy statements. |
| The court: | Taken subject to *Bell*. . . . |
| Brand: | He would say he would get it from JT. |

Defendant objected to the testimony as hearsay. The government replied the testimony was not hearsay under Federal Rule of Evidence 801(d)(2)(E).

The Eighth Circuit Court of Appeals interprets "the phrase 'in furtherance of' broadly." *United States v. Manfre*, 368 F.3d 832, 839 (8th Cir. 2004) (citing *United State v. Gjerde*, 110 F.3d 595, 603 (8th Cir. 1997)). A statement that advances the objective of a conspiracy is in furtherance of the conspiracy. *Id.* (citing *United States v. Mitchell*, 31 F.3d 628, 632 (8th Cir. 1994)). The court concluded this testimony was not hearsay because Brand was testifying regarding a statement made by a drug dealer about the supplier of his drugs. A drug dealer telling a drug user the identity of his supplier can be

in furtherance of the conspiracy because the drug user may only be willing to purchase drugs of a quality that is associated with a specific supplier. *See United States v. Krevsky*, 741 F.2d 1090, 1095 (8th Cir. 1984) (holding statements made to "allay apprehension and to insure good relations for possible future sales" were not hearsay under Federal Rule of Evidence 801(d)(2)(E)). Accordingly, the court properly admitted Brand's testimony regarding the source of Kicklighter's drugs.

### b. Carlson's Testimony

Additionally, Defendant objected to the testimony of Jamie Carlson. On direct examination, Ms. Carlson testified:

| | |
|---|---|
| Fletcher: | Ms. Carlson, I'd like to ask you when you were seeing Mr. Kicklighter during the spring of 2000[,] did you have any conversation with him about manufacturing methamphetamine? |
| Hrvol: | [Objection, relevancy and *Bell*]. . . . |
| The court: | The objection is overruled as far as relevance and as far as the rest it's probably a *Bell* issue. . . . |
| Fletcher: | And what would [you and] Mr. Kicklighter discuss? |
| Carlson: | He was in a relationship with another girl at the time and I didn't know about it. He said he was just staying there but I questioned why he was with her all the time and why he was always using her car and stuff and he told me that he was involved with her. |
| Fletcher: | And who is her? |
| Carlson: | Erin Taylor. |
| Fletcher: | And what was he telling you about the car and her? |
| Carlson: | That he would go to cook meth with Erin in Ruthven with JT. |
| Fletcher: | This JT[,] did you know who he was referring |

| | |
|---|---|
| | to? |
| Carlson: | No, I just knew a guy named JT that lived in Ruthven. |
| Hrvol: | Your Honor, can we have the same standing [*Bell*] objection on that[?] |
| The court: | Yes, taken subject to *Bell*. |
| Hrvol: | Thank you, your Honor. |
| Fletcher: | In regards to this JT or that you are referring to when you were talking about Mr. Kicklighter over the phone, how did you know this person was connected with Mr. Kicklighter? |
| Carlson: | He would just tell me that they cooked methamphetamine together. |
| AUSA: | Anything else? |
| Carlson: | That they used together and that was pretty much it, that he would go over there. That's really all I know, I think. |

Defendant objected to the testimony on grounds that it was hearsay. The court conditionally admitted the testimony. At trial, the government contended the testimony was not hearsay, however, the government never proved the statements were made in furtherance of a conspiracy. The jury should not have heard the testimony.

Although the jury should not have heard the testimony, the prejudicial effect of conditionally admitting the testimony was minimal because the testimony was redundant of other testimony and evidence. Kicklighter testified he and Defendant manufactured methamphetamine together and Brand corroborated Kicklighter's testimony. Moreover, the government presented other evidence showing that Defendant and Kicklighter manufactured drugs together. Therefore, although the jury should not have heard the evidence, the error was harmless.

### c. *Kicklighter's Testimony*

Also, Defendant objected to two portions of Kicklighter's testimony. Defendant had a standing objection to any testimony regarding the time after Defendant met Kicklighter in prison and the beginning of the conspiracy. On direct examination, Kicklighter testified:

| | |
|---|---|
| Fletcher: | Mr. Kicklighter, why were you wanting to get in contact with . . . Mr. Hessman in March of 2000? |
| Kicklighter: | At first just basically see what he was up to, just old prison friend. |
| Fletcher: | And in regard to the defendant[,] when you were with him in the pen[,] what did you discuss concerning narcotics? |
| Kicklighter: | I believe he was in there for manufacturing hash oil at the time and he talked about that he could manufacture methamphetamine too and there's three of us in a room besides him and we kind of all just thought you know he was just talking. You hear a lot of it in prison, everybody is saying they can do this[,] they can do this. We wasn't [sic] sure to believe him or not but we knew that he was in there for manufacturing hash oil and he said that he . . . could cook meth. |
| Fletcher: | When you got out was the only reason you got a hold of him because he was a former prison mate and just a buddy? |
| Kicklighter: | No, [I] was kind of hoping . . . something might come out of it. |

Defendant objected to the testimony on grounds that it was hearsay and could not be admitted pursuant to Rule 801(d)(2)(E) because the statements predated any conspiracy. The government stated the testimony was admissible because it explained the conspiracy

and was not hearsay under Rule 801(d)(2)(E).

At trial, the court conditionally admitted the testimony on grounds that it explained the conspiracy and, at the end of trial, the court admitted the testimony. A statement is not hearsay if the statement is offered to show the extent of the declarant's knowledge or to show the context within which the parties had been acting and the statement is not offered for the truth of the matter asserted. 5 Joseph M. McLaughlin, *Weinstein's Federal Evidence*, § 801.11(5)(a)-(b) (2d ed. 2005). The statements were not hearsay because the statements explained why Kicklighter contacted Defendant in 2000 and were not offered to show that Defendant actually manufactured methamphetamine. Therefore, the court concludes the statements were not hearsay and were admissible.

Defendant also objected to Kicklighter's testimony regarding a stabbing incident in a hotel. Kicklighter testified over Defendant's objection:

> Fletcher: What did you find out?
> Kicklighter: That Jay had just basically stabbed . . . himself in the leg with that knife that Steve had given him.

Defendant again objected to the testimony on grounds that it was hearsay. The court conditionally admitted the testimony. The government stated the testimony was not hearsay, however, never proved the statements were made in furtherance of the conspiracy.

Although the jury should not have heard the testimony, conditionally admitting the testimony did not prejudice Defendant. On direct examination, Brand testified, "[Defendant] had a switchblade[,] he pulled it out and stabbed his leg and blood came squirting out his jeans, appeared real paranoid." Defendant did not object to Brand's testimony about the stabbing. The court concludes the erroneous admission of Kicklighter's testimony regarding Defendant stabbing himself in the leg had no prejudicial

effect because the facts surrounding the stabbing had already been admitted into evidence through Brand's testimony.

### iv. Curative Instruction

At the close of the government's case, the court ruled that portions of Carlson's and Kicklighter's testimony were inadmissible hearsay because the government had not proven the statements were made in furtherance of a conspiracy. The court also gave a curative instruction. Specifically, the court told the jury to disregard the statements:

> Members of the jury, during the trial I conditionally admitted certain statements over the hearsay objection of defense counsel and I have now gone back and looked at those statements to see if they satisfy the rules of evidence. I have found that two statements are inadmissible and I am instructing the jury to disregard them and I'm going to tell you which statements those are. The first statement was during the testimony of Jamie Carlson, and in essence she testified that in the year 2000 while she was at the House of Mercy she had a phone conversation with Travis Kicklighter who told her that the reason he was spending time with Erin Taylor was because he[,] Erin and JT Hessman were manufacturing methamphetamine and using methamphetamine. That was improperly admitted and I am instructing the jury to disregard that piece of evidence.
> The second statement was a statement by witness Travis Kicklighter. He testified that while he and the defendant were in a Fort Dodge hotel room that the defendant said he was bleeding because he had snapped and stabbed himself. That statement was improperly admitted and I instruct the jury to disregard that statement. Those are the only two statements.

Defendant alleges the court erred by restating, highlighting and drawing attention to the inadmissible statements.

"A jury is presumed to follow it instructions, and therefore the use of a limiting

instruction decreases the danger that unfair prejudice will result from admission of the evidence." *United States v. Betterton*, 417 F.3d 826, 832 (8th Cir. 2005) (quotation marks and citations omitted). The court properly instructed the jury to disregard the testimony that had previously been conditionally admitted. Moreover, in the Preliminary Jury Instructions and Final Jury Instructions, the court instructed the jury that any testimony the court tells the jury to disregard must not be considered. Preliminary Instr. No. 3; Final Instr. No. 4. The curative instruction and the jury instructions remedied any prejudicial effect; it did not improperly highlight the inadmissible testimony. *See id.*

### v. Mistrial

Defendant asserts the court should have ordered a mistrial, rather than only issuing a limiting instruction. "[T]he remedy for improper admission of alleged co-conspirator statements is a mistrial only if a cautionary instruction will not suffice to cure any prejudice." *United States v. Greene*, 995 F.2d 793, 800 (8th Cir. 1993). The Eighth Circuit Court of Appeals has concluded that curative instructions will typically remedy any prejudicial effect. *See, e.g.*, *Hester*, 140 F.3d at 759 ("We are convinced that the district court's curative instruction were sufficient to purge any prejudicial effect . . . ."). The curative instruction was sufficient to cure any prejudice because the prejudicial effects of the two inadmissible statements were minimal. Therefore, the court did not err by refusing to declare a mistrial. *See, e.g.*, *Owens*, 953 F.2d at 393.

### 3. Jury Instructions

Defendant argues the court erred by (1) refusing to instruct the jury using the Iowa jury instruction regarding reasonable doubt; (2) giving a confusing jury instruction regarding similar acts evidence; and (3) refusing to use Defendant's proposed jury instructions.

First, Defendant asserts the court erred by refusing to use the Iowa jury instruction

regarding reasonable doubt. The jury instruction used by the court, Instruction No. 25, was taken from the Eighth Circuit Manual of Model Jury Instructions. *See* Eighth Circuit Manual of Model Jury Instr. (Criminal), Instruction 3.11 (2005) (hereinafter "Model Jury Instr."). The Eighth Circuit Court of Appeals has previously addressed the argument that courts should use the Iowa jury instruction regarding reasonable doubt and "dismissed [it] summarily, as the instruction given by the district court was taken from the Eighth Circuit's Model Criminal Instruction § 3.11 . . . ." *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988). Therefore, the court did not err by refusing to include the Iowa jury instruction regarding reasonable doubt.

Second, Defendant argues Instruction No. 5, the instruction regarding similar acts evidence, is confusing. Instruction No. 5 was modeled after Model Jury Instructions 2.08. *See* Model Jury Instr. 2.08. The court did not err by using Instruction No. 5 in the final jury instructions. *See, e.g.*, *United States v. Perkins*, 94 F.3d 429, 436 (8th Cir. 1996) ("What is significant is that the jury was, in fact, properly instructed about the limitations imposed on the evidence of the defendant's prior act.").

Third, Defendant states, "the trial court erred . . . in refusing to give the Defendant's requested jury instructions[.]" At trial, Defendant objected to Jury Instruction No. 9, regarding the credibility of witnesses, and Instruction No. 28, regarding deliberations. Again, Instruction No. 9 was modeled after Model Jury Instruction 4.05A and Instruction No. 28 was Model Jury Instruction 3.12. The Eighth Circuit Court of Appeals has approved of Model Jury Instructions 4.05A and 3.12. *See United States v. Worthing*, 434 F.3d 1046, 1050 (8th Cir. 2006) (citing Model Jury Instr. 4.05A with approval); *United States v. Kroh*, 915 F.2d 326, 335 (8th Cir. 1990) (en banc) (citing the fifth point of Model Jury Instr. 3.12 with approval). Therefore, the court did not err by using the Model Jury Instructions.

### *4. Testimony of Matthew Sturdevant*

Defendant asserts the court must grant a Defendant a new trial because the court erred by refusing to allow Defendant to call Matthew Sturdevant to testify. Matthew Sturdevant was Defendant's Probation Officer. Defendant wanted to call Matthew Sturdevant to testify about Defendant's behavior during the period that he was in federal custody. The court found Matthew Sturdevant's testimony about Defendant's behavior during a period after the alleged conspiracy was not relevant to any issue at trial. Testimony about a time period other than the period of the alleged conspiracy is not relevant to the issues at trial. *See, e.g.*, *United States v. Koessel*, 706 F.2d 271, 275 (8th Cir. 1983) (finding "no error in the trial court's refusal to allow [the defendant's] probation officer to testify to his good behavior on parole"). Therefore, the court properly excluded the testimony of Matthew Sturdevant.

### *5. Failing to Grant Defendant's Motion for Judgment of Acquittal*

Defendant contends the court must grant Defendant a new trial because the court erred by refusing to grant Defendant's Motion for Judgment of Acquittal at the close of the government's case and at the close of the evidence. For the reasons set forth above, the court concludes Defendant's Motion for Judgment of Acquittal was properly denied. *See supra* Part V.

### *6.) Five Grams or More of Methamphetamine*

Defendant contends the government presented insufficient evidence proving Defendant possessed five or more grams of actual methamphetamine. For the reasons set forth above, the court, however, did not err by permitting the jury to consider the drug quantity element of the crime. *See supra* Part V.B.

Therefore, Defendant is not entitled to a new trial.

## VII.  CONCLUSION

**IT IS SO ORDERED:**

(1)      The court **DENIES** Defendant Jay Todd Hessman's Post-Trial Motions
(docket no. 111).


**DATED** this 7th day of March, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA